# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6918 | **DATE** | 1/3/2011 |
| **CASE TITLE** | Clarett vs. Suroviak et al. | | |

**DOCKET ENTRY TEXT**

Defendants' Motion to Bifurcate and Bar Discovery [32] is granted in part and denied in part. Defendants' Motion to Deem Facts Admitted [30] is denied. However, Clarett must submit responses to some of defendants' requests for admission as described below.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

This § 1983 lawsuit centers around a traffic stop and arrest of plaintiff Patricia Clarett. Defendants Dennis Suroviak, Christopher Spierowski, Jason Mann, and Alberto Castillo are police officers employed by defendant the Village of Lynwood. Clarett raises a number of claims against the defendant officers including false arrest, failure to intervene, conspiracy, First Amendment retaliation, and malicious prosecution. Clarett also asserts a *Monell* claim against the Village of Lynwood, alleging that the Village "has a policy or practice of facilitating the very type of misconduct at issue here," that the Village has failed to train its officers, and that the Village policy makers are aware of misconduct but maintain a "code of silence" facilitating continuing violations. (Compl. ¶ 60.)

Motion to Bifurcate and Bar Discovery

Defendants have moved to bifurcate Clarett's *Monell* claim and bar discovery on that claim. (Doc. 32.) Clarett has propounded discovery requests seeking information about a wide range of past misconduct by Lynwood police officers. In their motion, Defendants have agreed that, if Clarett successfully proves the liability of individual officers, the Village will consent to judgment for compensatory damages on *Monell* liability. Thus the court and the parties could potentially avoid a significant expenditure of time and resources by bifurcating the *Monell* claim and first considering only the issue of liability for the individual officers. Federal Rule of Civil Procedure 42(b) permits bifurcation, at the court's discretion, "to expedite and economize" litigation in situations like this one. *See Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000) (affirming decision of district court to bifurcate *Monell* claim); *Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007) (bifurcating *Monell* claim and postponing *Monell* discovery).

In *Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346 (N.D. Ill. Mar. 1, 2002), Judge Darrah outlined the important considerations in addressing a motion to bifurcate in a lawsuit such as this:

# STATEMENT

Bifurcating the *Monell* claims has several advantages. First, in most cases, a disposition of the individual claims will either legally or practically end the litigation. If a plaintiff fails to prove that he suffered a constitutional injury based on the individual police officer's conduct, plaintiff's claim against the individual police officer fails and, as such, so does plaintiff's claim against the municipality. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Furthermore, if the plaintiff prevails against the individual police officer, he may not want or need to move forward on the *Monell* claims because Illinois law, 745 ILCS 10/9-102, directs the local government to pay tort judgments for compensatory damages for which the local government employee is liable. This statute allows a Section 1983 plaintiff to bring a claim directly against the municipality and obtain a judgment against the municipality to pay the officer if required to pay the plaintiff. *See Wilson v. City of Chicago,* 120 F.3d 681, 684-85 (7th Cir.1997).

Second, bifurcation is generally likely to bring about an earlier disposition of the suit because bifurcation allows a bypass of discovery relating to the *Monell* claims, which can add significant, and possibly unnecessary, time, effort, cost, and complications to the discovery process. *See* [*Medina v. City of Chicago,* 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000); *Jones v. City of Chicago,* No. 98 C 5418, 1999 WL 160228, at *3 (N.D. Ill. 1999).]

Third, bifurcation can remove potentially unfair prejudice against the police officers at trial. Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants. *See Medina,* 100 F. Supp. 2d at 895; *Jones,* 1999 WL 160228 at * 3.

Bifurcation of *Monell* claims also can have disadvantages. For example, individual public employees may be able to defeat a plaintiff's claims through the defense of qualified immunity. *See Wilson,* 100 F. Supp. 2d at 896. However, municipalities are not entitled to this defense. *See Owen v. City of Independence,* 445 U.S. 622 (1980). Therefore, if a plaintiff loses his claim against individual public employees based on the defense of qualified immunity, the plaintiff may still go forward with his claims against the municipality. Thus, a second trial is not avoided, and a large part of the second trial is likely to be duplicative of the first trial.

In addition, there is no guarantee that a municipality will concede liability under 745 ILCS 10/9-102 if a verdict is rendered against the individual officers. The municipality may dispute payment, arguing that the police officer was not acting within the scope of his employment-a requirement under the Illinois statute. *See* 745 ILCS 10/9-102; *Wilson,* 120 F.3d at 685. If the municipality does contest 9-102 liability, additional litigation time and costs will be required.

Last, a finding of liability against individual public employees, as compared to a finding of liability against a municipality, may decrease the likelihood of the municipality's acting to prevent future violations when that municipality is, or is not, named in a judgment.

*Lopez*, 2002 WL 335346, at *2-3.

Bifurcation in this case would appear to provide benefits in terms of economy. Clarett has

propounded a significant amount of *Monell* discovery in the form of document requests and interrogatories. Yet if the defendants are able to demonstrate that there was no constitutional violation of Clarett's rights by the individual officers, then there likely would be no basis for *Monell* liability. Although Clarett cites *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010), for the proposition that a municipality may sometimes be found liable even if individual officers are not, she does not explain how such an outcome in this case could avoid inconsistent verdicts. From a review of the complaint, the Village's liability appears to depend upon establishing that one of the individual defendants violated Clarett's rights. Because the Village has agreed to concede its own liability if one of the officers is found liable, a verdict for Clarett would obviate the need for further litigation.

There is one significant remaining problem with bifurcation. At this point, the Village has asserted an affirmative defense of qualified immunity. If the individual defendants are able to convince a jury that immunity is warranted in this case, then there would still be a need for a second, duplicative trial as to the Village's liability.

The court will follow Judge Darrah's example in *Lopez* and deny defendants' request to bifurcate at this time. However, the court grants defendants' request to stay discovery as to Clarett's *Monell* claim. *See Lopez*, 2002 WL 335346, at *3. After completing discovery on the claims against the individual officers, the parties may be in a position to resolve the case through settlement or summary judgment motions. If so, then the parties will have saved considerable efforts. Clarett's response brief makes no argument why moving forward now with *Monell* discovery would be important in the particular circumstances of this case.

Motion to Deem Facts Admitted

Defendants have also filed a motion entitled "Defendants' Motion to Deem Facts Admitted." (Doc. 30.) Defendants propounded two sets of Requests for Admission pursuant to Federal Rule of Civil Procedure 36. Defendants point to some of Clarett's responses as insufficient and ask that the court deem those requests admitted. Other than citing Rule 36, defendants' motion lacks any supporting authority.

Clarett alleges in her complaint that, during the traffic stop, defendant Castillo joked over his police radio that he would inform the Lansing Police Department of Clarett's arrest. (At the time, Clarett was pursuing a separate civil rights action against the Lansing Police.) One of defendants' requests to admit asked Clarett to acknowledge that the allegation in the complaint misconstrued and took out of context Castillo's comment. Defendants provide a partial transcript of Castillo's radio communication which purportedly demonstrates that Clarett's allegation is false. Defendants, in effect, ask the court to weigh disputed evidence and decide an issue of fact. Defendants cite no authority that would permit the court to enter such an order, and the court declines to do so.

Next, Defendants point to their requests to admit regarding whether Clarett illegally displayed a handicap placard on her rearview mirror while driving. Defendants contend that Clarett's responses are contradictory, but the court does not agree. These requests to admit also appear to involve disputed factual issues.

Defendants issued a series of requests which asked Clarett to admit or deny whether she had personal knowledge of a policy or practice supporting her *Monell* claim against the Village of Lynwood. Clarett's response to each of these requests was that she did not have sufficient information to admit or deny the request. This is a rather odd response, because Clarett presumably knows the extent of her own personal knowledge. Rather than simply deeming these requests admitted, Rule 36 permits the court to give Clarett

| STATEMENT |
| --- |
| another opportunity to correct her responses. Fed. R. Civ. P. 36(a)(6). A second chance would seem appropriate in this case. However, given that the court has stayed discovery on Clarett's *Monell* claim, the court will not require Clarett to respond to these Requests to Admit unless and until the stay is lifted.<br><br>Finally, defendants asked that Clarett make certain admissions regarding audio tapes of the defendants' communications. Clarett responded that she was unable to admit or deny the requests because she was then incarcerated by the Cook County Department of Corrections. The court will permit Clarett another 14 days to respond to these requests. If Clarett needs additional time, she should file a motion seeking an extension. |